# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

CHRISTINE JOHNSON,                   )
                                     )
                Plaintiff,    )
v.                                   )     Case No. 2:13-cv-067-JMS-DKL
                                     )
DR VANCE RAHAM,                      )
                                     )
              Defendant.    )


## Entry Granting Motion for Summary Judgment
## and Directing Entry of Final Judgment

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 20] must be **granted.**

## I.  Background

The plaintiff in this civil rights action is Christine Johnson ("Johnson"), a former inmate at the Rockville Correctional Facility ("Rockville"). The defendant, Dr. Vance Raham ("Dr. Raham"), was at all relevant times employed at Rockville.

Johnson alleges that when she was incarcerated, she had serious medical conditions including diabetes, pancreatitis, knee pain, and back pain, and that Dr. Raham refused to treat her in violation of the Eighth Amendment to the Constitution. She also brings a state law claim of medical malpractice.

Dr. Raham seeks resolution of Johnson's claims through the entry of summary judgment. Johnson has not opposed the motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

As noted, Johnson has not opposed the motion for summary judgment. The consequence of her failure to do so is that she has conceded the defendant's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## III.  Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Johnson as the non-moving party, the following facts are undisputed for purposes of the motion for summary judgment:

At all times relevant to her complaint, Johnson was an inmate at Rockville. Dr. Raham was the Medical Director and treating physician at Rockville.

Johnson has a complicated and serious medical history. She has diabetes, hypertension,

gastroesophageal reflux disease (GERD), asthma, Hepatitis C, chronic back pain, chronic knee pain, chronic hip pain, and chronic wide-spread pain. Prior to her incarceration, she had a left knee replacement, a lumbar fusion, and a partial pancreatectomy. Because she has had part of her pancreas removed, her diabetes is very difficult to control and she experiences extreme highs and lows in her blood sugar despite being on insulin. As a result of her previous pancreatectomy, she also suffers from chronic pancreatitis, which is inflammation of the pancreas. Because of her diabetes and her previous pancreatecomy, Johnson's kidneys are compromised and she is at risk for kidney failure. All medications are detoxified in the body through either the liver or the kidneys. Therefore, for a patient like Johnson who has chronic pancreatitis, diabetes, and compromised kidneys, her medication options are limited and she is at risk for kidney failure the more medications she takes. Johnson also has a history of deep venous thrombosis ("DVT"). Johnson took medication for her diabetes, her high blood pressure, her GERD, and for her DVT and water retention.

While incarcerated, Johnson's chronic conditions were managed in the Chronic Care Clinic. As a Chronic Care offender, she was seen every 12 weeks by either Dr. Raham or one of the nurse practitioners. For her diabetes management, in addition to being seen every 12 weeks, she received regular blood sugar checks and routine lab work including a hemoglobin A1c, which monitors the overall status of the patient's diabetes. She also received insulin and an American Diabetes Association diabetic diet. Johnson's insulin had to be regularly adjusted due to the large fluctuations in her blood sugars from her pancreas.

Johnson entered the Indiana Department of Correction on November 10, 2008. She reported having diabetes, high blood pressure, arthritis, pain, stomach troubles, back problems, low back pain, leg pain, and pancreatitis. On November 11, 2008, Johnson submitted a Request

for Healthcare stating that she had severe nerve damage in her lower back and legs and she needed her Neurontin. She also said she needed her stomach pills for her pancreas and that the back part of her pancreas was absent and she was afraid of having a pancreas attack. In response to this Request, medical staff instructed Johnson to obtain her prior medical records because she did not arrive at the prison on any medications for pancreatitis. Johnson had her intake physical exam with the nurse practitioner on November 13, 2008. Johnson was given a new diagnosis of Hepatitis C on November 20, 2008.

On November 23, 2008, Johnson presented to the diabetic medicine line very confused and dizzy. Nursing staff took her blood sugar, which was 621. Johnson was sent to the infirmary and nursing staff contacted Dr. Raham, who ordered a pulse check and 20 units of regular insulin, and a recheck of the pulse and blood sugar in one hour. An hour later, Johnson's blood sugar was 69 and her pulse was 104. Dr. Raham called to check on Johnson and was given her new numbers. He ordered staff to observe her for 2 hours and recheck her blood sugar and pulse, then call him back. Johnson then ate something and her blood sugar was 106. A few hours later, a nurse called Dr. Raham to report a blood sugar of 48 and a pulse of 120. Dr. Raham ordered D50, sodium chloride at 150cc per hour for 2 hours, then turn back to 125 cc per hour for the rest of the night. He ordered that Johnson be placed on 23-hour observation in the infirmary until Dr. Raham could check her in the morning. Dr. Raham also ordered the staff to call him if she had a blood sugar less than 50 or greater than 200. A few hours later, nursing staff called Dr. Raham to report a blood sugar of 38 and pulse of 128. Dr. Raham ordered food and to continue to monitor her. Several hours later, Johnson's blood sugar was 125. Dr. Raham was contacted again by nursing staff early in the morning on November 24, 2008, and he ordered that Johnson be given half of her dose of insulin and a change in her IV. On November 24, 2008, in the early afternoon,

Dr. Raham examined Johnson. He noted that her blood sugar was now normal but she was still nauseous. He stopped her IV fluids and gave her Phenergan for the nausea. He ordered continued infirmary observation.

On December 15, 2008, the nurse practitioner noted that Johnson had complaints of constant back and knee pain and that she was on Neurontin prior to her incarceration. She also noted that Johnson had a history of 5 back surgeries, 4 knee surgeries, and shoulder surgery. The nurse practitioner prescribed Neurontin for Johnson's chronic pain. The nurse practitioner examined Ms. Johnson on December 30, 2008, for back pain. Johnson reported increased back pain and weight gain. The nurse practitioner ordered a weight check every other day for 2 weeks and encouraged Johnson to exercise and use ice to decrease swelling.

On January 5, 2009, the nurse practitioner ordered that Johnson's blood sugar be checked twice a day for 2 months. On January 5, 2009, Johnson submitted a Request for Healthcare regarding severe hip and lower back pain. She said the hip pain was new and that Tylenol and Ibuprofen did not help. In response to this Request, Johnson was seen in sick call.

The nurse practitioner met with Johnson on January 20, 2009, to discuss the importance of her obtaining her prior medical records to assist with treating all of her pain complaints. The nurse practitioner instructed Johnson to purchase pain medication off the commissary. On January 25, 2009, Johnson had an episode of low blood sugar. Her blood sugar was 24 and nursing staff administered one tube of glucose gel and after 10 minutes, her blood sugar was 70. Her blood sugar then improved to 144 and she was returned to her dorm.

Dr. Raham examined Johnson on January 28, 2009. He noted that she had recently had several episodes of hypoglycemia, so he decreased her insulin dosage. Dr. Raham renewed all of Johnson's medications on February 10, 2009. Dr. Raham examined Johnson in the Chronic Care

Clinic on February 17, 2009. He found her diabetes to be stable and her hemoglobin A1c was 9.4. He also reviewed the status of her hypertension, asthma, and liver disease. Dr. Raham ordered blood work and renewed Neurontin.

Johnson submitted a Request for Healthcare on March 6, 2009, stating that there was something wrong with her left knee and right foot. She was seen in nursing sick call on March 9, 2009. Johnson reported that she injured her knee playing sports and that she had a knee reconstruction in four surgeries in 1985. The nurse instructed Johnson to use heat and ice as needed and to return if the symptoms did not subside or became worse. The nurse practitioner examined Johnson's left knee on March 11, 2009. Johnson had multiple scars on her left knee and weak ligaments. Her left heel had no blistering, but had a bruise likely from her posture due to her knee pain. The nurse practitioner ordered a knee brace for 3 months, ice and warm compress for 3 months, and an x-ray. Johnson had a left knee x-ray on March 12, 2009, which showed post-surgical metallic anchors in the distal femur and proximal tibia with no fracture or dislocation.

Johnson submitted a Request for Healthcare on April 26, 2009, stating that her left knee was swollen and painful. She was seen in nursing sick call on April 28, 2009. Johnson reported right knee pain after she was "told to run down the hill" and felt a pop or a tear in the area. The nurse noted edema in both legs but the right leg was larger. The nurse immobilized the knee with an elastic bandage and gave her instructions for heat and ice. The nurse also gave her crutches and a 2-day lay in. Dr. Raham ordered that Johnson could use crutches until she was able to bear weight on her right knee. Johnson then saw the nurse practitioner on April 29, 2009. The nurse practitioner noted that she had been issued crutches, but that Johnson was not using them that day. On exam, her medial collateral ligament was tender with a knot at the insertion into the

tibia. The nurse practitioner instructed Johnson to continue using crutches and ordered an x-ray of the right knee. Johnson had an x-ray of the right knee on April 29, 2009, which showed no fracture or dislocation.

Dr. Raham examined Johnson in the Chronic Care Clinic on May 7, 2009. Johnson had reached her hemoglobin A1c goals, with an A1c of 6.8. He started Johnson on Lantus insulin. Her asthma, hypertension, and Hepatitis C were stable. Dr. Raham renewed Johnson's diabetic diet and Neurontin and ordered blood work.

The nurse practitioner examined Johnson on May 8, 2009 for knee pain in both knees. The nurse practitioner noted that Johnson was not wearing the brace she was prescribed for the right knee. On exam, Johnson had ligament tenderness in both legs. She ambulated well with crutches. The nurse practitioner instructed Johnson to follow medical directions and elevate lower extremities when able and apply ice and warm compresses to both knees for 15 minutes every two hours. The nurse practitioner ordered continued Tylenol, a medical lay-in for 2 days, and a supporting brace for the left knee.

Dr. Raham adjusted Johnson's insulin on May 14, 2009, and on May 19, 2009. Johnson refused her insulin on May 20, 2009. Dr. Raham adjusted Johnson's insulin on June 4, 2009. Dr. Raham examined Johnson in the Chronic Care Clinic on July 16, 2009. Her diabetes was stable. Dr. Raham ordered lab work and renewed Neurontin. Dr. Raham adjusted Johnson's insulin on August 13, 2009, August 20, 2009, August 27, 2009, and September 3, 2009. On September 10, 2009, Johnson received a notice of noncompliance with her diabetic diet. Dr. Raham also adjusted her insulin on this day. Johnson received a second notice of non-compliance with her diabetic diet on September 15, 2009.

Dr. Raham adjusted Ms. Johnson's insulin on September 17, 2009, and on September 24, 2009. Johnson received a second notice of non-compliance with her diabetic diet on October 8, 2009. Dr. Raham examined Johnson in the Chronic Care Clinic on October 14, 2009. Her diabetes was stable and her hemoglobin A1c was decreased from 8 to 7.6. Dr. Raham renewed Johnson's medications, ordered a bottom bunk pass for 180 days, and ordered blood work.

On October 20, 2009, Dr. Raham ordered monitoring of Johnson's blood sugar twice a day for 6 months. Johnson refused her insulin on October 28, 2009. On November 17, 2009, Johnson received her third notice of non-compliance with her diabetic diet.

Dr. Raham adjusted Johnson's insulin on November 19, 2009, and on December 3, 2009. On December 15, 2009, Johnson submitted a Request for Healthcare complaining of abdominal pain and swelling, among other issues. Johnson was seen in nursing sick call on December 17, 2010. The nurse referred Johnson to the provider. Dr. Raham examined Johnson on December 21, 2010. Dr. Raham noted a history of pancreatitis for the past 10 years. Dr. Raham prescribed Prilosec because she had been on Zantac and Tagamet with continued pain. Dr. Raham adjusted Johnson's insulin on December 30, 2009. Dr. Raham renewed Neurontin on January 6, 2010. Dr. Raham adjusted Johnson's insulin on January 7, 2010.

Dr. Raham examined Johnson in the Chronic Care Clinic on January 13, 2010. Her diabetes was stable and her hemoglobin A1c was 7. Dr. Raham continued her medication and ordered lab work. Johnson submitted a Request for Healthcare on January 18, 2010, asking to be seen for her back pain and hip pain that was shooting down her leg. Johnson was seen in nursing sick call on January 20, 2010. Johnson complained that commissary medications did not help her back pain. Johnson was not in any acute distress and she was referred to the provider. The nurse practitioner examined Johnson on January 21, 2010, for back pain. The nurse practitioner

discussed heat, stretching, and body mechanics. She also prescribed Tofranil. Dr. Raham adjusted Johnson's insulin the same day. On January 22, 2010, Johnson had an elevated blood sugar of 448. The nurse practitioner ordered 15 units of regular insulin. Johnson had an elevated blood sugar on January 26, 2010, at 407, and Dr. Raham ordered 4 units of regular insulin.

On February 21, 2010, Johnson reported that she collapsed while going up stairs, injured her right knee, and had pain across her back and leg. On exam, she had no edema, no bruising, full range of motion, and was able to get up and off the exam table without assistance. Dr. Raham ordered a wheelchair ride to lunch and then to her dorm. Dr. Raham adjusted Johnson's insulin on February 25, 2010.

Johnson submitted a Request for Healthcare on March 2, 2010, asking for something different than Prednisone for the pain and swelling in her back and legs. Johnson was seen in nursing sick call for back pain on March 4, 2010. Johnson wanted her medication dosage increased, so she was referred to the provider. Dr. Raham adjusted Johnson's insulin on March 4, 2010. The nurse practitioner examined Johnson for back pain on March 5, 2010. The nurse practitioner noted that Johnson had tried a Prednisone dosepak, which helped, and that she could not take NSAIDs due to her kidneys. The nurse practitioner noted that she was uncomfortable utilizing further steroids so she would discuss the case with Dr. Raham.

Johnson submitted a Request for Healthcare on March 8, 2010, regarding hip pain. In response, she was seen in nursing sick call on March 11, 2010, and she reported that none of her medications helped her hip pain. Nurse Practitioner Kim Jefvert examined Johnson on March 12, 2010, for hip and back pain. Nurse Practitioner Jefvert explained that Dr. Raham had referred Johnson to her for pain management and that she and Dr. Raham agreed that Johnson was on the maximum medication for her chronic pain. Johnson became upset and stormed out of the room,

walking evenly on both feet, not limping or dragging either leg. Her neurological exam was stable and benign. The nurse practitioner ordered x-rays of the hip and spine.

Johnson had x-rays on March 17, 2010. The x-ray of her lumbar spine showed degenerative arthritic changes with no evidence of fracture or dislocation. Her hip x-ray showed early degenerative changes with no evidence of fracture or dislocation.

Dr. Raham adjusted Johnson's insulin on Aril 1, 2010. Nurse Practitioner Jefvert examined Johnson on April 6, 2010, for right hip pain. Johnson had sciatic hip pain. The nurse practitioner reviewed her x-rays and increased her Tofranil dose. She also ordered a cane. Dr. Raham renewed Johnson's Neurontin. Dr. Raham adjusted Johnson's insulin on April 8, 2010. On April 12, 2010, Dr. Raham renewed Johnson's diabetic diet for 180 days. Dr. Raham adjusted Johnson's insulin on April 15, 2010. On April 19, 2010, Dr. Raham ordered blood sugar checks twice a day for 6 months.

On May 2, 2010, Johnson submitted a Request for Healthcare about pain in her knee, hip, leg, and back. She was seen in nursing sick call on May 4, 2010, and was referred to the provider. The nurse practitioner examined Johnson on May 5, 2010. Although Johnson claimed to be in extreme pain and to have difficulty ambulating, she was not using her cane. On exam, Johnson did not have any appreciable symptoms anywhere. The nurse practitioner thought Johnson had a virus and her motor function of the extremities was unchanged. She ordered lab work and for Johnson to increase fluids. Johnson submitted a Request for Healthcare on May 7, 2010, stating that she was lightheaded, her legs gave out, and she had back and hip pain. On May 8, 2010, Johnson reported falling when she stood up from her bunk. She reported that this was happening often and felt like the blood drained from her body. Nurse Practitioner Jefvert adjusted her medications and ordered blood pressure checks twice a day for two weeks.

On May 13, 2010, Johnson had an episode of low blood sugar. She was taken to the infirmary and examined by Dr. Raham. She was placed on an IV, given glucose, and vital signs were taken. She was also given juice, food, and Tylenol for pain. Dr. Raham ordered insulin and admitted Johnson to the infirmary overnight for observation. Johnson was released back to her dorm the next day with a bottom floor and bottom bunk pass for 6 months.

Dr. Raham adjusted Johnson's insulin on June 17, 2010. Dr. Raham examined Johnson in the Chronic Care Clinic on July 8, 2010. Her diabetes was stable and her hemoglobin A1c was 6.8. Dr. Raham continued her medications, adjusted her insulin, and ordered lab work.

Dr. Raham renewed Neurontin on July 12, 2010. Johnson submitted a Request for Healthcare on July 13, 2010, stating that her legs hurt and she could hardly stand, sit, or lay. In response, she was seen in nursing sick call on July 15, 2010, and referred to the provider. Johnson saw Nurse Practitioner Jefvert, on July 16, 2010, for her leg pain. Johnson reported that her Tofranil was not renewed recently with her other medications and she noticed a difference. Nurse Practitioner Jefvert renewed the Tofranil.

On September 17, 2010, Johnson submitted a Request for Healthcare stating that her urine had a strong odor and her right-sided swelling was worse. She was seen in nursing sick call on September 19, 2010. Her vital signs were taken and a urine dipstick showed no blood or white blood cells in the urine. The nurse noted that her blood sugars were elevated recently. Johnson was instructed to increase her water intake.

Johnson refused her insulin on September 29, 2010. Dr. Raham examined Johnson in the Chronic Care Clinic on October 5, 2010. Her diabetes was stable and her hemoglobin A1c was 7. Dr. Raham renewed her diabetic diet for 180 days, ordered lab work, and continued her medications. On October 11, 2010, Dr. Raham ordered blood sugar checks twice a day for 6

months.

Johnson submitted a Request for Healthcare on December 3, 2010, regarding swelling on her right side. She was seen in nursing sick call on December 5, 2010. Nurse Practitioner Jefvert examined Johnson on December 7, 2010. The nurse practitioner noted that Johnson's right side was swollen and that she had peripheral neuropathy from diabetes. Johnson's weight did not reflect a large fluid increase, so the nurse felt the issue was rheumatologic and not critical. The nurse practitioner ordered a urine culture. On December 9, 2010, Nurse Practitioner Jefvert adjusted Johnson's Tofranil dose to the maximum dose. Johnson had blood work done on December 22, 2010.

Dr. Raham examined Johnson in the Chronic Care Clinic on December 27, 2010. Her diabetes was stable and her hemoglobin A1c was less than 7. Dr. Raham renewed her medications.

Dr. Raham renewed Johnson's insulin on January 5, 2011. Johnson refused her insulin on February 8, 2011. Johnson also asked that her insulin be lowered. Johnson refused her insulin on February 10, 2011, even though her blood sugar was low, at 58. Dr. Raham ordered Johnson to eat something and her blood sugar actually decreased to 56. Johnson then ate again and her blood sugar was only 77 and she still refused her insulin. Dr. Raham ordered Johnson to take her insulin. Johnson's blood sugar was then 150.

Dr. Raham adjusted Johnson's insulin on February 14, 2011. Johnson refused her insulin on February 16 and 18, 2011. Dr. Raham adjusted Johnson's insulin on February 18, 2011, per her request.

On February 23, 2011, Johnson submitted a Request for Healthcare regarding body swelling, chest pain, and that she looked like she was 7 months pregnant. At 9:45 p.m. on

February 24, 2011, Johnson went to the medical unit with complaints of exertional chest pain of a gradual onset for less than an hour, which radiated to her epigastric region and felt like pressure. She also reported nausea, but no vomiting. She described severe pain that started in her epigastric area and radiated down her sides to her lower stomach and around into her back. Nursing staff took Johnson's vital signs and noted that she did not have swelling, chills, cough, sweating, fever, or heartburn. On exam, her abdomen was soft and non-tender. Dr. Raham ordered magnesium citrate, a urine culture, and Bactrim. Given Johnson's recent history of urinary tract infection, Dr. Raham's differential diagnosis was urinary tract infection and related discomfort. Dr. Raham prescribed Bactrim, a Sulfa antibiotic, for the urinary tract infection. Johnson was apparently allergic to Sulfa drugs, but she did not experience any problems or issues with this dose of Bactrim. Johnson stayed in the infirmary overnight. The nurse noted an allergy to Sulfa, but Johnson denied being allergic to Sulfa, so the nurse gave her Bactrim, but said she would speak with Dr. Raham before her next dose.

At 1:23 a.m. on February 25, 2011, Johnson reported pain. She was given comfort measures, a warm compress, and relaxation exercises. Nursing staff collected a urine sample at 1:43 a.m. At 2:01 a.m., nursing staff reviewed Johnson's chart and noticed that someone had ordered Bactrim for Johnson the day before and that Johnson received it at 11:00 p.m. the night before and that Johnson was allergic to Sulfa drugs. The nurse assessed Johnson and noted no changes to her assessment, her vital signs were good, she had no complaints, and that nursing staff would continue to monitor her. At 6:09 a.m., nursing staff called Dr. Raham and notified him of the possible medication error. The nurse noted no reaction from Bactrim and that Johnson's vital signs were stable. Dr. Raham issued new orders for pain medication.

Per Dr. Raham's orders, from 7:30 a.m. until 1:30 p.m., Johnson was periodically given a total of four enemas, which returned highly colored water but no flakes of stool. Johnson complained of diffuse abdominal pain. She was not vomiting. On exam, her abdomen was distended and firm, she had hypoactive bowel sounds in all four quadrants, and she had no fever. Her blood sugar was 100. At 2:30 p.m., Dr. Raham discussed Johnson with nursing staff, and ordered that Johnson be sent to the emergency room at Union Hospital.

At Union Hospital, Johnson presented with abdominal pain and distension and had an abdominal and pelvic CT scan. On February 26, 2011, Johnson was transferred to Wishard Hospital's Detention Unit. Johnson was admitted to Wishard Hospital through March 2, 2011, for acute renal failure. Her diagnosis was pyelonephritis, hypoxia, hyponatremia, renal failure, and anemia. Wishard Hospital noted that Johnson had a history of chronic pancreatitis and frequent urinary tract infections. Her acute renal failure was determined to be from acute interstitial nephritis and her abdominal pain was the result of the chronic pancreatitis.

Johnson returned to the prison on March 2, 2011. Dr. Raham admitted her to the infirmary and ordered a diabetic diet, lab work the next several mornings, insulin, Colace, Tylenol 325 mg., and vital signs every shift. Dr. Raham examined Johnson on March 3, 2011. Dr. Raham noted that the treatment plan was oral hydration, adjustment of medications, and resolution of her acute renal failure, with a goal of a creatinine of less than 2. Pursuant to the recommendations of Wishard Hospital, Dr. Raham reduced Johnson's medications down to just three: Insulin, Colace, and Tylenol. As a result of being taken off some of her medications, Johnson's creatinine levels improved. Dr. Raham ordered the last two doses of Levaquin that Johnson received in the hospital. Johnson remained in the infirmary until March 7, 2011, and she was monitored constantly by nursing staff. Dr. Raham reviewed Johnson's lab work from Union

Hospital on March 4, 2011. Dr. Raham released Johnson from the infirmary on March 7, 2011.

On March 14, 2011, Johnson reported to the infirmary with complaints of nausea, vomiting, and abdominal discomfort. Dr. Raham ordered blood work, temporary infirmary placement, Phenergan, Keflex, an IV, and urinalysis. Because nurses could not get IV access, were unable to control Johnson's pain, and the lab reports took too long to obtain, Dr. Raham sent Johnson to Union Hospital. Johnson presented with abdominal pain, nausea, vomiting and back pain. Johnson's vital signs were normal. Union Hospital then transferred Johnson to Wishard Hospital on March 15, 2011, because she had just been released from that hospital the prior week. Johnson was admitted to Wishard Hospital through March 19, 2011, for abdominal pain and acute pancreatitis. She was treated for pancreatitis and a urinary tract infection.

Johnson returned to the prison on March 19, 2011, where she remained in the infirmary until March 28, 2011. While in the infirmary, Johnson was monitored daily by nursing staff; her fluid intake and output was measured; blood work was done three times; she had a urinalysis; she received Neurontin, Phenergan, Lasix, and Vicodin; her vital signs were monitored; and her weight was monitored. Dr. Raham renewed Johnson's Neurontin on March 28, 2011.

Johnson was seen in nursing sick call on April 6, 2011, for lower back pain. She reported that her urine smelled like alcohol yesterday. A urine dipstick showed no blood, but white blood cells. Dr. Raham ordered a urinalysis. On April 12, 2011, Dr. Raham ordered monitoring of Johnson's blood sugar.

Johnson submitted a Request for Healthcare on April 14, 2011, stating that she had pain in her side, abdomen, and back and that her urine was strong and cloudy. On April 16, 2011, Johnson was seen in nursing sick call and the nurse practitioner ordered Diflucan and Macrodantin because the urinalysis showed a urinary tract infection. On April 30, 2011, Johnson

submitted a Request for Healthcare about her medications being reduced since her hospital stay. Dr. Raham refilled Johnson's medications on May 4, 2011. Dr. Raham prescribed Zantac on May 18, 2011. Dr. Raham ordered lab work, including liver tests and a hemoglobin A1c on May 31, 2011.

Johnson submitted a Request for Healthcare on June 1, 2011, stating that she was having trouble again with her kidneys, including strong urine and another urinary tract infection. The nurse practitioner examined Johnson on June 3, 2011, and diagnosed her with a urinary tract infection and prescribed Diflucan and Macrodantin.

Johnson's blood was drawn on June 22, 2011, and her hemoglobin A1c was 7.7. Dr. Raham renewed Neurontin on June 27, 2011. Dr. Raham examined Johnson in the Chronic Care Clinic on June 28, 2011. He reviewed her lab work and counseled her on her diet. Dr. Raham continued her medications and ordered blood work. Johnson transferred to the Madison Correctional Unit on June 6, 2011. Dr. Raham had no further involvement with her care after that transfer.

It is Dr. Raham's opinion that while Johnson was at Rockville, her chronic back problems did not warrant surgery or other treatment other than pain management. Johnson was provided with Neurontin and Tofranil for back pain. The medication options for Johnson were limited because she could not take NSAIDs due to her chronic conditions. Johnson received the maximum dose of pain medication that she could take. As to Johnson's right knee pain, it is Dr. Raham's opinion that because the x-ray taken in April of 2009, was completely normal, there was no medical indication to do an MRI or other diagnostic tests. He further opines that the only treatment that was medically necessary for Johnson's right knee pain was pain management, rest, and assistance with ambulation as necessary. Johnson received pain medication, a bottom bunk

pass, and a cane to help with ambulation. Johnson also complained of hip pain that was likely related to her back pain. Her hip x-ray was normal except for early arthritic changes. Therefore, it is Dr. Raham's opinion that the only medical treatment that was indicated for her hip arthritis was pain management.

Johnson's hospital admissions in February and March 2011 were the result of her chronic pancreatitis and kidney problems. Dr. Raham did not pull Johnson from the hospital at any time. Dr. Raham had no control over what medical care an outside hospital rendered or how long any of his patients remained admitted to a hospital.

From October 1, 2008, to October 1, 2011, Dr. Raham was a "qualified healthcare provider" under Indiana's Medical Malpractice Act. Johnson did not file a proposed complaint against Dr. Raham with the Indiana Department of Insurance.

### B. Analysis

#### 1. *Deliberate Indifference Claim*

At the time of her confinement at Rockville, Johnson was a convicted offender. Accordingly, her treatment and the conditions of her confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishments. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish a medical claim that a prison official

has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison official to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). Dr. Raham does not dispute that Johnson had objectively serious medical needs.

As to the second element, "[t]o show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King,* 680 F.3d at 1018-1019 (internal quotation omitted). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson,* 444 F.3d at 585 (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted). "Even gross negligence is below the standard needed to impose constitutional liability." *Id.* (internal quotation omitted).

Johnson alleges that Dr. Raham was made aware of her conditions through medical requests, nurses, or other staff, but refused to treat her. Johnson complains that the treatment she received for her knee and back pain, diabetes, and pancreatitis was inadequate. With regard to her knee, Johnson claims she injured her right knee while performing her work duties at

Rockville. Johnson alleges that she did not receive any treatment for this injury and that for three months she used crutches to get around. Johnson claims her knee condition was later diagnosed as a torn meniscus that required surgery and that she suffered from this during her entire incarceration at Rockville. With regard to her back, Johnson suffered from a pre-existing back condition. She alleges that she had surgery scheduled before she became incarcerated. Johnson alleges that she made frequent complaints and requests for help for her back. She alleges she was not allowed to have surgery on her back and that she scheduled a back surgery immediately after her release from prison. With regard to her diabetes, Johnson claims that she had problems with insulin regulation which went untreated. With regard to her pancreatitis, Johnson alleges that her problems began with a urinary tract infection that did not resolve despite antibiotics, and then she experienced abdominal swelling, pain, and had to be sent to the hospital. Johnson claims that on March 2, 2011, Dr. Raham pulled her from the hospital and returned her to Rockville before any additional tests could be performed. She asserts that he did not do any further testing on her once she returned to the prison and she had to return to the hospital.

Johnson's allegations are not supported by admissible evidence. The sworn affidavit of Dr. Raham and the authenticated medical records are not contradicted. During Johnson's confinement at Rockville, Dr. Raham and the other providers treated her for a variety of medical conditions, including GERD, asthma, Hepatitis C, hypertension, diabetes, chronic pain, and pancreatitis. Johnson's diabetes was difficult to control because part of her pancreas had been removed. Every time Johnson experienced a high or low blood sugar, Dr. Raham and the medical staff responded with treatment. As a Chronic Care Clinic patient, Johnson was seen by either Dr. Raham or a nurse practitioner every 12 weeks, she received a diabetic diet, and she received insulin, which Dr. Raham adjusted according to her blood sugars. Her blood sugar and

hemoglobin A1c were also checked regularly. In response to Johnson's chronic knee pain, her right knee was x-rayed. The x-ray was negative. In addition to pain medication, Johnson was given a knee brace, crutches, a cane, a wheelchair when necessary, instructions for heat and ice and elevation, rest, and a bottom floor and bottom bunk pass. With respect to Johnson's chronic back pain, surgery was not indicated. Her pain was managed with the maximum level of pain medication that she could take, given her other chronic conditions. Finally, Johnson is subject to flare-ups of her pancreatitis. In February of 2011, Johnson had a flare-up and Dr. Raham sent her to the hospital. Once she stabilized and return to the prison, Dr. Raham admitted Johnson to the infirmary and monitored her medications until her renal function returned to normal. When she had another flare-up the following month, Dr. Raham again sent her to the hospital. When she returned to the prison, Dr. Raham followed the recommendations of the hospital physicians. There is no evidence that Dr. Raham refused to treat Johnson at any time. These circumstances do not rise to the level of deliberate indifference.

"[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible…." *Arnett v. Webster,* 658 F.3d 742, 754 (7th Cir. 2011). Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.* Even if Johnson had shown negligence on the part of Dr. Raham, which she has not done, that would not be sufficient to survive summary judgment as to her claim of deliberate indifference. *See Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008) ("negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense"). In addition, there is no evidence that Dr. Raham's actions fell below the applicable standards of care.

2.   *Medical Malpractice Claim*

A state law claim for medical malpractice against a qualified medical provider such as

Dr. Raham [dkt. 22-31] requires a plaintiff first to use the screening procedures supervised by the Indiana Department of Insurance. *See* Ind. Code ' 34-18-8-4. Because Johnson did not go through that process, Dr. Raham is entitled to summary judgment on this claim. *See Medical Assur. Co., Inc. v. Hellman,* 610 F.3d 371, 374 (7th Cir. 2010) (medical malpractice panel must issue an opinion on medical malpractice claims before they may be pursued in court); *Hartz v. Friedman*, 919 F.2d 469, 470 (7th Cir. 1990) (malpractice claims dismissed without prejudice for failure to present the malpractice complaint to a medical review panel pursuant to Indiana law); *Harbison v. Tanner,* 1:12-cv-01623-WTL, 2013 WL 5960909, *4 (S.D.Ind. Nov 7, 2013) (dismissed medical malpractice claim when plaintiff failed to file claim with medical review panel and obtain opinion prior to filing suit).

## IV.  Conclusion

For the reasons set forth above, the motion for summary judgment filed by Dr. Raham [dkt. 20] must be **granted.** Judgment consistent with this Entry and with the Entry of March 29, 2013, shall now issue.

**IT IS SO ORDERED.**

Date: 02/10/2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

Christine Johnson, 5988 Carlton Drive, Apt. #6, Burlington, KY  41005